Good morning, your honors. May it please the court. My name is Joseph Porta. I represent the petitioner in this matter, Mr. Gang Wang. This is an immigration case revolving around solely a credibility determination, one that went against Mr. Wang. The immigration judge in the incident case found several basis. However, the Board of Immigration Appeals affirmed the decision based on two of those. A brief history about the factual circumstances of this case, other than the credibility determination, to put it in context. The petitioner was a member of a religion in China that's called Yi Wan Dao, which is a smaller minority religion that's opposed by the government. And in learning to practice this religion, a friend of his, who he had met 20 years prior, had mailed him some books from the United States. And the gentleman that had mailed him the books had previously been granted asylum. Now, one day the petitioner is sitting at work, and around 9 o'clock two undercover police officers show up, search his desk, find these five books, and take him downstairs to put him in a police car. As he's going to the car, a picture is snapped of him being held by these two police officers, and he's taken to a police station where he's detained for seven days. He's interrogated three times. He's beaten, consisting of punches, kicks, and a shot with an electric gun. No, you usually read the record. Yes. Now, the basic two reasons that the Board found that he was not credible or affirmed the IJ's decision was the manner in which the books were sent. Now, I have a little bit of a diagram here that I'd like to say out loud regarding the petitioner's testimony basically has about three sentences in it regarding the issue. The petitioner stated, he gave me the books without a cover, because he was smart. It says, and there was no Yiguan Daowords on the actual cover of the book that was received, and that the book was mailed with clothing so no one will pay any attention. That's the extent of the petitioner's testimony on the issue. Now, the witness testified later in the proceedings, and he testified that he mailed five books. He also testified that he knew that it was illegal, and he said he did consider that there was some risk, but he says, quote, I didn't think that just by mailing a couple of books to him would cause direct trouble or an immediate problem to him. Now, he was asked by the judge, did you take any precautions? No further words were used other than that. Is that testimony credible by the witness when he had been the beneficiary of an asylum earlier on for practicing this religion, and he left China for those very reasons? So for him to say, gee, I thought mailing these books back to China wasn't a big deal, is that a credible statement, or is the IJ entitled to discount that testimony for those reasons as he seemed to do? I don't think that it's not necessarily an incredible statement. I think the gentleman's saying, I didn't think it was a big deal. I'm sending some books without a cover, wrapped and closed. I didn't think it was going to be that big of a deal. I didn't say he sent it without a cover, wrapped and closed. I didn't think that just by mailing a couple of books to him would be a big deal. I don't think that that's a big deal. I don't think there's any discrepancy between that witness and the petitioner. The petitioner says the books were mailed without covers. The witness says he doesn't recall, and he doesn't recall whether he mailed them in clothing. Again, going back to this witness's history with this religion and leaving China, wouldn't that be an event that a reasonable person in the witness's shoes would recall, and he would recall specifically how he mailed them, in what manner? I think we have to look at the totality of circumstances to answer that question. And looking at this witness's testimony, he had trouble ascertaining the dates of when he even met the petitioner himself. They had met in school 20 years prior, and his testimony was completely off regarding the dates. I don't think that it's a matter of incredulity as much as it is a witness with some bad memory. Five years had transpired since the mailing of these books. Now, for the petitioner, someone in his situation who's receiving them, knowing of the clandestine nature and on the receiving end of the books in the totalitarian state, he probably thought about it a little bit more than the individual who was sending it. I mean, the IJ said, and I think the BIA repeated it, although I'm not sure about this, that the person who sent it ripped the covers off and ripped the title page off. There was no evidence of either of those things. No, there isn't. The only thing that it shows was that the covers were removed. It doesn't state who removed the covers. It says by the petitioner, it says he removed the covers, but there's no evidence in the record. It could have just been something that the petitioner believed. But isn't the, maybe that's just a colloquial expression that the covers were ripped off. Isn't the material fact that according to the petitioner there were no covers on the books and the witness doesn't recall whether he took the covers off or not? Correct. Isn't that the key issue and the factual discrepancy that the IJ sees, Tom? I think perhaps, but I don't think that that's enough to hang someone's hat on for credibility determination. The key fact is as well in the material fact is that this individual sent the books. And I think that's something very fundamental that is not given enough weight. He sent the books. He doesn't recall how he sent them. One person's remember has covers. The other person doesn't remember whether it had them or not. But the fact of the matter is the books were sent. These were the same books that were confiscated and led to his arrest. I think we're splitting hairs on something that doesn't need to be a determination  Did anybody ask the witness whether he, whether the books had covers? No. No, it wasn't asked. It wasn't asked by anybody, not the government, not the attorney for the petitioner who was not me, or by the IJ. And the other issue is this thing about the photograph. Yes. Now, the photograph, Your Honor, that's located on page 473 of the record. And I've been staring at this photograph for days. There's a lot of comments that were made by the IJ and a lot of them in passing. A lot of them were kind of jokingly saying, well, it looks like someone's smiling. I don't necessarily see anybody smiling. I can do those as to cultural details. But the gentleman who does appear at the right is offset from the picture quite a bit. And he is leaned over to the side a little bit. And it is very possible that he can actually be taller than the other two. And even from the distance, the IJ said he was the shortest of the three. And he's clearly not the shortest of the three, no matter what perception you look at this picture in or what plane. But basically, this gentleman, he also had an issue with the picture with where are the books. I'm not sure where the books are. Nobody knows where the books are. But there's a lot of the story that's not contained within this picture. A picture tells a thousand words, but it doesn't tell the entire story. The books could have been dropped on the floor. The petitioner said that there was also a driver. The petitioner wasn't keeping his eye on the books. He was being arrested, about to go get beaten up. I don't think he was keeping vigilance on the exact placement of the books when a photograph was taken. But the fact that the judge doesn't see the photographs in the book and saying that the petitioner is not telling the truth because of that, I just don't see how that could happen. The photograph is cut off basically. The petitioner also testified, I believe, going back to the covers, that there were no covers on the books. But then later in his testimony, he explained what the titles of each book was. Is that an internal inconsistency? How could he do that if there were no covers on the book? I don't think there's enough in the record to make that determination. There could be some sort of something in the language of the books that says I don't know enough about the religion to answer that. They didn't say they took the title pages off. They said they took the covers off. It said covers. There was nothing other than the judge misinterpreted the record and misinterpreted the facts in front of him, and also made some sort of determination that was not based upon record evidence that there was the title pages taken out. But the respondent, the petitioner, said nothing of the sort. He said he had no questioning. For all we know, he was talking about the ‑‑ I believe the context that all this was stated was the following. It says, so the judge asked Mr. Wang. It says, so at this time when you asked for the books, did you know that it was illegal in China to practice this religion? And the petitioner answers, okay, I do understand that. That was a fact. But Zhang Erqi, who's the witness, was smart. He gave me the books without the cover, and there's no words written about Yu Guangdao on the cover of the book, and he mailed it along with the clothing so no one would pay attention to it. That's it. That's all that was said around this, and the witness said, I don't remember taking the covers off. Now this has turned into somebody not telling the truth because a witness forgot. He didn't even say that. He didn't say, I don't remember taking the covers off. He just said, I don't remember what I did. Right. I would have asked him if he took the covers off. He said, I packaged it neatly, and I believe he said, I didn't think that just by mailing a couple of, it says he doesn't remember, he didn't remember taking specific precautions. But there is something in this, in the case law in this Court that basically says that, that Your Honor should recognize that the normal liveness of understanding and memory may only make some inconsistencies or lack of recall present in any witness's case. No one has perfect recall, and the fact that somebody didn't remember the exact protocol that they used to mail somebody books, he verified that he mailed the books. Do you agree we would consider the record as a whole for the agency, including all of the various factors that the IJ set out and not just the two factors that the BIA focused on? I think the Board, in the way that they limited the language and the way that the decision is written, the Board summarized the IJ's decision. And at the time, and I'm not, I didn't make this argument, but there was some evidence submitted because the witness did have a discrepancy on the dates regarding when he actually met the Petitioner. I believe that's a minor inconsistency anyway that wouldn't support an adverse credibility determination. But in fact, I mean, just doctrinally, we don't consider discrepancies that weren't relied upon. So we don't consider the whole record. We consider what was relied upon, and then we consider whether the record supports what was relied upon. Correct. And here, the language that's used by the Board of Immigration Appeals. Because it's an agency case, and we don't decide something on the ground that the agency didn't decide. Correct. My contention is that the agency only relied on these two points in affirming it, but in making the decision, they mentioned it more as of a backdrop, as here's what's going on in the case, here's what the IJ found, but we're upholding it just on these two. You've exceeded your time, and I will give you a minute to reply. Thank you, Your Honors. May it please the Court. My name is Lance Jolly. I represent the Respondent, the United States Attorney General. The oil is getting efficient in sending one person to do two cases. We do our best, Your Honor. Okay. That was a good idea. I was just off and don't do it. Anyway, go ahead. Respondent maintains that substantial evidence supports the agency's adverse credibility finding. As to the covers. That's just a takeoff point. Do you agree or disagree that we look at the two issues that the BIA mentioned, or do we look at others as well? The statute says, dictates that the adjudicator must look at the totality of the circumstances. And this Court. The question is what we do, what we're reviewing, what the Court, what the agency did. The Court is limited. To reverse the record must compel the conclusion. The record would indicate that you would consider everything. But generally, the Court focuses on the reasoning of it. We consider everything, because we're not reviewing the record. We're reviewing the agency's decision. Correct. We only stand on the two findings of the agency regarding. Okay. So you're only arguing about the two. Right. BIA relied on. Right. All right. If it's unsubstantiated based on these two bases that the record compels the conclusion, that's not substantial evidence. Okay. We consider the record as a whole as to those two factors that the BIA relied upon. That sounds like a good melding of the two aspects. All right. So now where are we? So now go on. The witness omitted that the covers of the books sent had been removed. He was asked twice what precautions were sent. It was obvious. Wait a minute. The witness admitted that the covers had been removed? No, no. The witness omitted the fact. Omitted.  But he wasn't asked. He was asked twice what precautions were taken. But he wasn't asked whether he. I mean, it's kind of a weird way to conduct a. If you're trying to find out whether he removed the covers, you'd ask him whether he removed the covers. No one asked him that. That's sort of a leading question, though, at the same time. Of course. Don't you use leading questions all the time in cross-examination? Right. Well, the. But it doesn't mean you have. The immigration judge doesn't have to. I understand that. But it makes the whole thing very flimsy, because we don't. All you said was I don't remember. You didn't say I didn't do it. The discrepancy about the covers, to me, seems obvious. And that follow-up by the attorney. No discrepancy. I never said I didn't remove the covers. The omission. The omission is obvious. All I said was I don't remember. The witness did not say that not remembering pertains to the photographs and where the books were. No, no. The witness.  Not.  No. I don't recall the witness saying he didn't remember. After the second. The first time, he said he put everything in a big envelope. And the second time, he called Wang and talked to him before mailing it. Those were his responses to the two questions regarding precautions. Pages 244 and 245 of the administrative record. As it is obvious that there is some sort of discrepancy in the omission, the warnings weren't needed. And it creates the reasonable conclusion that. Okay. Did you take any kind of precautions when you mailed the books? I don't remember. Oh, I stand corrected. Okay. Let me ask you this question. The I.J. said, Wang said the witness tore the covers off the books. The I.J. made that up, didn't he? The I.J. made that up. About tearing off the covers. That might have been how he interpreted it. It's not substantiated by the testimony. He made it up. There was no such testimony. The fact that it was torn off was not the critical aspect of the omission. The I.J. said the witness tore off the covers. Is that true or not true? The issue is that. What? The issue is that there is a discrepancy. Will you please answer yes or no. Was that true? Was what true? I just told you. The witness said the witness tore the covers off the books. Is that true or not true? It's inconclusive. Say yes or no, please. It's inconclusive. The record doesn't indicate whether it was torn off or not. You think that the witness tore the covers off the book. Is that true or not true? I can't tell from the record whether. You can't answer yes or no? The testimony does not indicate that he tore them off. It doesn't mean that he didn't tear it off. It just means. So you think as long as something is not one way or the other, it's always indefinite? The critical issue is that there were no covers to the book. So the fact as a precaution, it's immaterial whether they were torn off or not. As to defer to not be detected, the critical issue is that there were no covers. The manner of which they were removed is immaterial. Well, it's not immaterial to the question of whether this guy would have remembered that he ripped off the covers or ripped off the tile pages. It's a lot more likely that he would have remembered that if he went around ripping off covers or ripping off tile pages than if he just mailed some books that happened not to have covers. Okay. No, that's reasonable. You would have more cause to remember that as a precaution taken. The record, as I understand it, is the Petitioner says the books arrived with no covers. The witness doesn't recall how he mailed them. Is that fair? As Judge Burr's on the record, I'll stand by what she had read. But isn't that a material discrepancy? That goes to my point earlier as to Mr. Porta, that a witness sending contraband to China ought to remember how he sent them? I would think so. With covers and clothing, without covers? Whether he sent them. He generally remembered the condition of the book, whether it would have covers or not. And you would consider it a precaution to have no covers if the witness really believed. What else bothers me is that this is all in translation, right? Correct. And we don't really know whether he meant covers or jackets because he then says something else about the end. There's no way that would have been translated differently. So it's very vague. I mean, this is always true about translations. Right. But to be making a whole lot out of not that much. What about the photographs? The photographs. Petitioner testified that two policers confiscated his five books, took him under arrest, and escorted him to the car. Before arriving at the car, a security guard at the bank took a picture that was submitted into evidence. What do you say before arriving and before we got in the car? I believe it's arriving. I'm not sure. Record, page 213, 237 are where they talk about that. I'm pretty sure it's before arriving is what the question was. Go ahead. The photo did not show the books. When asked why, Petitioner claimed a faulty memory. Under this Court's decision in risk, a claim of a failure of memory is not a reasonable and plausible explanation for a discrepancy. And analyzing the discrepancies between Petitioner's claim, although there might be reasonable explanations as to why there was discrepancies between the testimony about the covers as well as the books, even if there's reasonable, it's not compelling. Where do you say the testimony was about when he arrived at the car? I have noted pages 213 and 237 of the record concerning his arrest and the questions pertaining to it. Do you argue in order to reverse, the evidence has to compel it? Correct. That when there's two reasonable alternative explanations for the evidence presented, you cannot reverse. So even though you may even consider one explanation more reasonable, it is still not compelling evidence to command reversal. I'm trying to find 213 before I lay it down because I thought it was a little slightly different than what you said. But I could be wrong. It would seem just from the context that the picture would be taken before they got into the car. Yes, that's true, before they got into the car. That's different from before anybody got to the car. Right. That's what I was trying to say, actually. I believe that's why there was stress, but we can certainly wait. All right. No, that's fine. I'm having trouble finding it. Wasn't there evidence in the record that the I.J. thought the photograph itself may have been orchestrated, that it was unusual, that a security officer would happen by and take this photo of the police officers? I know there are several questions about the actual taking of the picture and how he got a hold of it. It's not a basis of the Faber's credibility determination. And so, yeah, back to where we started at the beginning of the argument. All right. Thank you very much. Thank you. I'll give you one minute in the pile. Just a couple of points here. I believe that we're looking, we're examining the record to see if substantial evidence supports the I.J.'s decision. But I think in looking at the I.J.'s decision, we need to look to see if his reasoning is fatally flawed. The I.J. implored mischaracterizations of the record, speculation, conjecture, and just flat-out disbelief from the moment he even saw that there was a photograph. He thought he had a gotcha moment, and from that moment he proceeded with that, not necessarily with an objective mindset to looking at the totality of the circumstances. That, to me, is a fatally flawed determination, and we look at it that way. If it's fatally flawed, I don't think we have now whether it's a plot. It's fatally flawed. It's not a reasonable or probable interpretation of it. Couldn't that be a reasonable point of view to express incredulity that the photograph happened to be taken at that moment? I mean, it is a remarkable thing to have a photograph that purports to depict officers taking the petitioner away, and the snapshot occurred just then. And I think it is remarkable. It's unusual, but I think that adds to the credulity. He has a photograph of when he's in China standing in front of a police car, handcuffed by two policemen. And he also has a flyer. Right. They hung it up in his work unit to basically dissuade fellow workers from engaging in these types of activities. Nobody had said the flyer was forged or anything. No. There was just an issue with the picture because the frame was cut off just below the waist and showed their heads, and they couldn't see any books. Who knows where the books are? He doesn't remember. But I just, there's a photograph of him being arrested, and no one seems to. But is it unfair for the I.J. to approach that photo with suspicion? Just, the I.J. approached it. It was manufactured. Well, there's no indication that the photo was manufactured. The I.J. just appeared, I believe his words were, he used some pretty strong words. In the record, the moment it was even just presented, like, wow, you have a picture. This is amazing. You know, this is, and from that point on, it was, it was. Did the flyer have the picture on it? I believe so. That's my interpretation of the record. It looks like it basically had the picture and basically said such and such was detained and arrested for engaging in anti-colt activities. Why can't you tell that the flyer is in the record? How come we can't tell if the photo's on it? I'm sorry? Is it the flyer itself on the record? I'm not sure. I believe so. I'd have to grab it. All right. Thank you. I thought I saw the flyer. Thank you very much. Thank you, Your Honor. Thank you. The case is submitted and we will take the case as well. Wine v. Holder is submitted. We will take a short break. Thank you.
judges: Sabraw, NOONAN, BERZON